# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALVIN PARKER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  Case No. CIV-14-862-D |
| | ) |
| TERRY MARTIN, | ) |
| Warden, | ) |
| | ) |
| Respondent.[1] | ) |

## REPORT AND RECOMMENDATION

Petitioner Alvin Parker, an Oklahoma state prisoner appearing pro se, filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus (Doc. No. 1, "Petition"). United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). Having reviewed the Petition and supporting documents, the undersigned recommends that it be dismissed.

---

[1] The docket sheet in this matter also identifies the Attorney General of the State of Oklahoma as a Respondent. However, the only proper respondent is the Warden of Dick Conner Correctional Center ("DCCC"), who is the state officer having custody of Petitioner. *See* 28 U.S.C. § 2242; R. 1(b), 2(a), Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). The Court Clerk is directed to terminate the Attorney General of the State of Oklahoma as a party in this matter. Further, Janet Dowling has replaced Terry Martin as Warden of DCCC. *See Dick Conner Correctional Center*, Okla. Dep't of Corr., http://www.ok.gov/doc/Organization/Field_Operations/East_Institutions/Dick_Conner_Correctional_Center.html (last visited Apr. 20, 2015). If this matter is not dismissed, Ms. Dowling should be substituted as Respondent. *See* 28 U.S.C. §§ 2242, 2243; Fed. R. Civ. P. 25(d), 81(a)(4); Section 2254 R. 1(b), 2(a).

BACKGROUND

In 1990, Petitioner was convicted by a jury in the District Court of Oklahoma County of second-degree murder and was sentenced to imprisonment for 199 years. Pet. at 1; *see also Parker v. Champion*, 148 F.3d 1219, 1220-21 (10th Cir. 1998) (summarizing *State v. Parker*, No. CF-85-698 (Okla. Cnty. Dist. Ct. filed Feb. 12, 1985)).[2] Petitioner now asserts two grounds upon which he seeks federal habeas relief.

First, Petitioner asserts that the Oklahoma Pardon and Parole Board's ("OPPB") decision not to recommend Petitioner for parole in December 2013 violated Petitioner's right to equal protection under the Fourteenth Amendment. Pet. at 4. In support of this argument, Petitioner asserts in full:

> Similarly situated inmates have been intentionally treated differently by the parole board, and there is no rational relation between the dissimilar treatment and any legitimate penal interest. The parole board granted parole to three inmates since the December 2010 docket. Jerry Walton, Marvin Green and Mark Sanders all were recommended [for] parole but [P]etitioner was not recommended for parole in December 2013. And like Walton, Green and Sanders, [P]etitioner had no prison misconduct conviction within twelve months of being considered, had not participated in a riot or in the taking of hostages, [had not] been placed on escape status, while in the custody of the Department of Corrections, had not been convicted of three or more felonies arising out of separate and distinct transactions, with three or more incarcerations for such felonies, and had completed his incarceration plan as assessed by the Department of Corrections. There is no legitimate penal interest for denying [P]etitioner parole.

Pet. at 4.

---

[2] The docket sheet for Case No. CF-85-698 is publicly available at http://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=cf-85-698.

Second, Petitioner asserts that a state-court sanction imposed upon Petitioner in May 2014, in connection with his fourteenth state postconviction relief application, violated Petitioner's right to due process under the Fourteenth Amendment. Pet. at 5-6. Petitioner states that before the sanction was imposed, he was directed to and did show cause as to why he should not be sanctioned. Pet. at 5-6. Petitioner alleges that the state court nevertheless entered an order to sanction Petitioner by (1) revoking 720 earned credits from Petitioner; (2) ordering Petitioner to pay $1000 in fees; and (3) revoking Petitioner's nonessential personal property for 180 days. Pet. at 6. Petitioner states that the challenged order is based upon a state statute that permits state courts to impose certain sanctions upon prisoners who file frivolous or malicious claims. *See* Pet. at 6 (citing Okla. Stat. tit. 57, § 566(C)). Petitioner asserts that the imposition of sanctions upon him for the filing of his fourteenth state postconviction relief application was improper because "there was no evidence th[a]t the claim was indeed frivolous or malicious." Pet. at 6 (capitalization altered). Petitioner further asserts that the claim in that application "was based upon new evidence" and had never been raised before. Pet. at 6 (capitalization altered).

Petitioner attached a copy of the state court's order to his Petition. Pet. Ex. 1, Doc. No. 1-1. The order generally is consistent with Petitioner's description of the sanctions imposed but with a key distinction: the state court suspended its revocation of Petitioner's earned credits "so long as Petitioner ceases to pursue collateral remedy in the Oklahoma County District Court." Pet. Ex. 1 at 7-8. The court added: "Should Petitioner pursue yet another collateral review then the Court may in its discretion impose all or part

3

of the suspended sanction." *Id.*[3] Petitioner does not assert that any earned credits have actually been revoked as a result of this sanction order. *See* Pet. at 6.

As to each ground, Petitioner expressly seeks only a "writ of habeas corpus." *See* Pet. at 4, 6, 8.

ANALYSIS

Petitioner's two claims challenge, pursuant to 28 U.S.C. § 2241, the fact or duration of his confinement in state custody.[4] Petitioner is thus required to establish that his confinement violates the United States Constitution or other federal law, entitling him to a lesser confinement period or immediate release. *See* 28 U.S.C. § 2241(c)(3); *Wilkinson v. Dotson*, 544 U.S. 74, 78-79, 81 (2005); *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997). As discussed below, however, even assuming Petitioner's factual allegations to be true, Petitioner fails to meet this standard.

A. *Ground One*

As noted, Petitioner in Ground One of the Petition alleges an equal protection violation in connection with the denial of his parole. Pet. at 4. The Fourteenth Amendment's Equal Protection Clause generally requires like treatment among similarly

---

[3] The state court also suspended 150 of the 180 days of revocation of nonessential personal property "so long as Petitioner ceases to pursue collateral remedy in the Oklahoma County District Court," adding, "[s]hould Petitioner pursue yet another collateral review then the Court may in its discretion impose all or part of the remaining days of the suspended portion of the sanction." Pet. Ex. 1 at 7.

[4] The Petition is not verified as required under 28 U.S.C. § 2242. *See* Pet. at 8. Although this deficiency alone is a basis for dismissal, the undersigned has considered the merits of Petitioner's claims, as is within the discretion of the Court. *See, e.g.*, *Hem v. Maurer*, 458 F.3d 1185, 1201 n.6 (10th Cir. 2006).

situated persons, limiting a state's ability to burden a fundamental right or to target a suspect class. *See Romer v. Evans*, 517 U.S. 620, 631 (1996); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Petitioner has previously argued in a § 2241 habeas petition before this Court that an OPPB decision to deny him parole violated his right to equal protection under the Fourteenth Amendment. *Parker v. Standifird*, 469 F. App'x 659, 659-60 (10th Cir. 2012). In that petition, Petitioner alleged differential treatment on the basis that other convicted murderers whose victims were not police officers had received parole, but Petitioner whose victim was a police officer had been denied parole. *Id.* at 660. In denying Petitioner's request for a certificate of appealability (after this Court dismissed the petition), the Tenth Circuit set forth the relevant standard for such a claim: "Because Parker does not claim to be a member of a suspect class, he cannot prevail on his equal protection claim unless he ultimately proves that 'the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose.'" *Id.* (quoting *Templeman v. Gunter,* 16 F.3d 367, 371 (10th Cir. 1994)).

Applying the same standard here, Petitioner has again failed to state a claim for an equal protection violation. In his Petition, Petitioner does not claim to be a member of a suspect class and states only that, as to select factors related to prison behavior and criminal history, Petitioner is "like" three other inmates who received parole. *See* Pet. at 4. Petitioner specifically asserts:

> And like Walton, Green and Sanders, [P]etitioner had no prison misconduct conviction within twelve months of being considered, had not participated in a riot or in the taking of hostages, [had not] been placed on escape status,

5

while in the custody of the Department of Corrections, had not been convicted of three or more felonies arising out of separate and distinct transactions, with three or more incarcerations for such felonies, and had completed his incarceration plan as assessed by the Department of Corrections.

Pet. at 4.[5] From these limited similarities, Petitioner concludes, "There is no legitimate penal interest for denying [P]etitioner parole." *See* Pet. at 4. Petitioner does not identify or address any distinctions between himself and the identified parolees. *See* Pet. at 4.

As an initial matter, Petitioner fails to allege sufficient facts to establish that he and the identified parolees are similarly situated with regard to *required* factors in parole consideration. For instance, the OPPB is statutorily required to "consider the prior criminal record of inmates under consideration for parole recommendation." Okla. Stat. tit. 57, § 332.7(I). Petitioner, however, does not detail his own criminal record beyond his conviction for second-degree murder and does not detail the criminal records of the identified parolees, as would be required to allege that Petitioner is similarly situated to those individuals in this critical respect. *See* Pet. at 4. Differences between Petitioner's prior criminal record and those of the identified parolees could present a reason for denying Petitioner parole that reasonably relates to a legitimate penological purpose.[6] *See Parker v. Standifird*, 469 F. App'x at 660.

---

[5] Some of the factors identified by Petitioner reflect statutory criteria prescribed for determination of whether a prisoner is eligible to be considered or recommended for parole. *Compare* Pet. at 4, *with* Okla. Stat. tit. 57, § 332.7(G), (J).

[6] The nature of Petitioner's crime could provide such a distinction:

> In a previous petition challenging his 2004 parole hearing, Petitioner alleged that the parole board's decision was based "on the factor that his victim was a police officer," and accepting this allegation as true, the court

6

Further, the OPPB is statutorily required to consider an inmate's conduct and record "during his custody in the Department of Corrections." Okla. Stat. tit. 57, § 332.7(J). This consideration is not limited, as suggested by Petitioner, to whether an inmate received a "prison misconduct conviction within twelve months" of parole consideration. *See* Pet. at 4; Okla. Stat. tit. 57, § 332.7(J). Petitioner does not detail either his own conduct and record or those of the identified parolees for the duration of his or their custody in the Oklahoma Department of Corrections. *See* Pet. at 4. Again, differences between Petitioner and the identified parolees as to this expansive issue could present a distinction between Petitioner and those parolees that would render a parole denial for Petitioner reasonably related to a legitimate penological purpose. *See Parker v. Standifird*, 469 F. App'x at 660.

Moreover, Petitioner's listed factors and the above statutory factors do not constitute the entire universe of factors that the OPPB considers in the discretionary process of determining whether an inmate is "worthy" of parole. *See* Okla. Const. art. VI, § 10; Okla. Stat. tit. 57, § 332.7 (establishing criteria to be eligible for parole consideration but not requiring that parole be granted in any event). For instance, the OPPB, in deciding whether to recommend parole, considers input from law enforcement

---

> of appeals concluded that "the fact that a prisoner was convicted of killing a police officer, as opposed to a civilian citizen, shows a lack of respect for authority and a unique danger to society that bears a rational relationship to his likelihood to adjust to society upon release."

*Parker v. Standifird*, No. CIV-10-1395-D, 2011 WL 5429464, at *3 n.5 (W.D. Okla. Nov. 9, 2011) (quoting *Parker v. Sirmons*, 152 F. App'x 705, 708-09 (10th Cir. 2005)).

7

officials, victims, and victims' representatives. *See* Okla. Stat. tit. 57, § 332.2(K), (M); Okla. Admin. Code § 515:1-7-2(b)-(c). Additionally, the OPPB considers whether an inmate "has demonstrated appropriate behavior while in an institution which ensures an opportunity for success socially and economically." *Parole Process*, Okla. Pardon & Parole Bd. (Apr. 19, 2015), http://www.ok.gov/ppb/Parole_Process/index.html. Such subjective factors present further opportunities for distinctions between Petitioner and the identified parolees—none of which are addressed by Petitioner. *See* Pet. at 4; *Parker v. Standifird*, 469 F. App'x at 660.

In sum, Petitioner's assertions that he is similar to three paroled inmates in very limited respects, even if assumed to be true, provide insufficient "factual support for the legal basis of his equal protection claim, *i.e.*, that any difference in treatment [by the OPPB] is not related to a legitimate penological purpose but is, instead, the result of unlawful discrimination." *See Parker v. Standifird*, 469 F. App'x at 660 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009); *Templeman,* 16 F.3d at 371).[7] Accordingly,

---

[7] In *Templeman*, which involved discretionary classification decisions in prison housing assignments, the Tenth Circuit alluded to the extreme rarity of a successful equal protection claim based on a discretionary penological decision in the absence of any suspect classification:

> Even though the regulations offer a list of criteria to consider, [state corrections] officials must weigh the various criteria and whatever else seems relevant in making the qualitative judgment how to classify an individual inmate. Despite Templeman's allegations, it is "clearly baseless" to claim that there are other inmates who are similar in every relevant respect. Not only might the [state corrections officials] classify inmates differently because of slight differences in their histories, but they also might classify inmates differently because some still seem to present more risk of future misconduct than others. Templeman's claim that there

8

Ground One of the Petition should be dismissed for failure to state a claim upon which relief may be granted under § 2241. *See* 28 U.S.C. §§ 2241(c)(3), 2243; R. 1(b), 4, Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules") (permitting court to dismiss any habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court").

   *B. Ground Two*

In Ground Two, Petitioner alleges a due process violation occurred when sanctions were imposed upon Petitioner by a state court in connection with Petitioner's fourteenth application for state postconviction relief. Pet. at 5-6. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In the context of a § 2241 challenge, an alleged due process violation must implicate the prisoner's liberty interest in being free from confinement. *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998). Here, Petitioner must present sufficient facts to show that the sanctions of which he complains will unconstitutionally prolong the duration of his confinement.

   1. Earned Credits

In Oklahoma, some prisoners accumulate "earned credits," which reduce the duration of their confinements. *See* Okla. Stat. tit. 57, § 138. A prisoner has a protected

---

   are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable.

*Templeman,* 16 F.3d at 371 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).

9

liberty interest in such earned credits and is entitled to due process before the credits may be revoked. *See Mitchell v. Maynard*, 80 F.3d 1433, 1444-45 (10th Cir. 1996); *Waldon v. Evans*, 861 P.2d 311, 313 (Okla. Crim. App. 1993) (citing *Mitchell v. Meachum*, 770 P.2d 887, 890 (Okla. 1988)). The loss of such credits may prolong the duration of a prisoner's confinement, and, thus, such a deprivation in the absence of due process may be challenged under § 2241. *See Wilkinson*, 544 U.S. at 78-79, 81; *McIntosh*, 115 F.3d at 812.

As discussed above, however, Petitioner alleges no actual (or imminent) loss of credits. *See* Pet. at 5-6. The state court ordered the revocation of 720 earned credits from Petitioner but simultaneously suspended that revocation "so long as Petitioner ceases to pursue collateral remedy in the Oklahoma County District Court." Pet. Attach. 1 at 7-8. If Petitioner violates the condition, the state court "*may* in its discretion impose all or part of the suspended sanction." *Id.* (emphasis added). Petitioner does not allege that such discretion has been exercised. *See* Pet. at 5-6. Nor is there any indication on the state court docket sheet that the court has exercised its discretion in that regard. *See State v. Parker*, No. CF-85-698; *supra* note 2. In light of the broad discretion retained by the state court as to the suspended sanction, this Court's consideration of any potential future exercise of that discretion would be improperly speculative.

By failing to allege an actual loss of earned credits, Petitioner has failed—insofar as this aspect of Ground Two—to allege sufficient facts to establish a deprivation of a protected liberty interest. Stated another way, Petitioner has failed to allege sufficient facts to establish that the duration of his confinement will be prolonged as a result of the

sanction. Thus, as to this aspect of the sanction, Petitioner has failed to state a claim under § 2241 upon which relief may be granted.[8] *See* 28 U.S.C. § 2241(c)(3); *Wilkinson*, 544 U.S. at 78-79, 81; *McIntosh*, 115 F.3d at 812.

2. Other Sanctions

The other sanctions imposed upon Petitioner by the state court—fees and a revocation of nonessential personal property for a limited duration—are not alleged to affect the duration of Petitioner's sentence. *See* Pet. at 5-6. Nor is any such effect apparent from the allegations. Thus, any challenge to these sanctions is not cognizable under § 2241. *See* 28 U.S.C. § 2241(c)(3); *Wilkinson*, 544 U.S. at 78-79, 81; *McIntosh*, 115 F.3d at 812. Because Ground Two presents no claim upon which relief may be granted under § 2241, it should be dismissed. *See* 28 U.S.C. §§ 2241(c)(3), 2243; Section 2254 R. 1(b), 4; *see also Thomas v. Rios*, No. CIV-13-350-W, 2013 WL 3564017, at *1, *3, *5 (W.D. Okla. July 11, 2013) (denying petition involving allegations of similar sanctions as outside the scope of § 2241).

---

[8] Because Petitioner has failed to allege the requisite deprivation of a protected liberty interest, the undersigned does not consider whether any process received was adequate. Of note, however, that determination would be affected by what is said in any ultimate state court order revoking the suspended earned credits sanction. *See generally Parker v. Province*, 339 F. App'x 850, 854 (10th Cir. 2009) (holding that before state court may sanction prisoner under Okla. Stat. tit. 57, § 566(C), it must first establish a basis for finding that presented claim was frivolous or malicious).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Petition (Doc. No. 1) be dismissed. The undersigned further recommends that Petitioner's "Motion to Expedite Cause" (Doc. No. 5) be denied as moot.

## NOTICE OF RIGHT TO OBJECT

Petitioner is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by May 12, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Petitioner is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case. The Court Clerk is directed to serve copies of the Petition and this Report and Recommendation on Respondent and on the Attorney General of the State of Oklahoma through electronic mail sent to fhc.docket@oag.state.ok.us. *See* Section 2254 R. 1(b), 4.

ENTERED this 21st day of April, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE